# Exhibit 1

## SETTLEMENT AGREEMENT

# CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

Subject to Court approval, Insight Foundation of Hillside, Insight Foundation of Trumbull, Firdaus Foundation, Jawad A. Shah, M.D., P.C., Jawad A. Shah, M.D. and Ali Madha (collectively, "Defendants"), and David McCullough, Angela Foor, Vanessa G. Satterthwaite, and Billie E. Fike ("Representative Plaintiffs") individually, and on behalf of the Tier 1, Tier 2, and Tier 3 Eligible Settlement Participants (defined below), and Ohio Council 8 American Federation of State, County and Municipal Employees, AFL-CIO; and its LOCAL 2288, American Federation of State, County, and Municipal Employees; and its LOCAL 2804, American Federation of State, County and Municipal Employees, AFL-CIO; and its UNA LOCAL 2026, American Federation of State, County and Municipal Employees, AFL-CIO, and Service Employees International Union, District 1199 WV/OH/KY (collectively, the "Unions") voluntarily enter into this Settlement Agreement and Release (this "Agreement") to settle all claims raised or that could have been raised in the Action (defined below). The Representative Plaintiffs, Unions, and the Defendants will be collectively referred to as the "Parties."

## BACKGROUND AND RECITALS

1. Plaintiffs McCullough and Foor filed the original complaint in this matter, captioned *David McCullough, et al. v. Insight Foundation of Hillside, et al.,* Case No. 4:25-cv-00644, in the United States District Court for the Northern District of Ohio. The Unions, along with Plaintiffs Satterthwaite and Fike, moved to intervene. Thereafter, Representative Plaintiffs and the Unions filed their operative Master Consolidated Amended Collective and Class Action Complaint and Jury Demand on January 22, 2026 (the "Action"). In the Action, Representative Plaintiffs and the Unions asserted class and collective action claims against Defendants on behalf of themselves and others similarly situated under the WARN Act, the Fair Labor Standards Act,

O.R.C. § 4113.15, O.R.C. § 4111.01, O.R.C. § 2307.60, Article II, § 34a of the Ohio Constitution, common law for "alter egos," unjust enrichment, injunctive relief, and the Employee Retirement Income Security Act of 1974 ("ERISA").

2. Defendants deny Representative Plaintiffs' and the Unions' allegations and deny liability for the claims asserted in the Action, as stated in Defendants' Answers to Plaintiffs' Master Consolidated Amended Collective and Class Action Complaint.

3. To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in settlement negotiations.

4. The Parties attended three (3) mediations, the first occurring on September 22, 2025 and another on November 24, 2025 with Attorney Stephen Dalesio mediating. The final mediation occurred in-person on April 28, 2026, with Judge James S. Gwin mediating pursuant to an order and referral by the Court.

5. The purpose of this Agreement is to fully and finally settle all Released Claims (as defined below) that Representative Plaintiffs and Unions and any Claimants (as defined below) may have against Defendants.

## DEFINITIONS

6. "Tier 1 Claimant" means a Tier 1 Eligible Settlement Participant who completes and returns a Claim Form, as well as each Representative Plaintiff.

7. "Tier 2 Claimant" means a Tier 2 Eligible Settlement Participant who completes and returns a Claim Form, as well as each Representative Plaintiff.

8. "Tier 3 Claimant" means a Tier 3 Eligible Settlement Participant who does not opt out of the Settlement, as well as each Representative Plaintiff.

9. "Claimants" means all Tier 1, 2, and 3 Claimants, collectively.

10. “Claim Form” means the form approved by the Parties’ Counsel, and subject to Court approval, that each Tier 1 and 2 Eligible Settlement Participant (as defined herein), including Representative Plaintiffs, must sign, complete in full (including providing supporting documentation, if available), and timely submit within forty-five (45) days following mailing of the Notice of Settlement to recover a Tier 1and/or Tier 2 Individual Settlement Payment.

11. “Court” means the United States District Court for the Northern District of Ohio.

12. “Defendants’ Counsel” means Yelena G. Katz, Joseph R. Blalock, and Jordan J. Call of Benesch Friedlander Coplan & Aronoff LLP.

13. “Class Counsel” means Christina C. Spallina of Ross Brittain & Schonberg, Co., L.P.A., and Robert J. Dubyak of Dubyak Nelson, LLC.

14. “Union Counsel” means Kimm A. Massengill-Bernardin and Michelle R. Evans of Ohio Council 8, AFSCME, AFL-CIO, Catherine Harshman of Harshman Wannemacher Tipton & Lipperman, and Lora Molnar of Cloppert Latanick Sauter & Washburn.

15. “Effective Date” means (i) thirty-one (31) days after the date the Court enters an order granting Final Approval of the Settlement, assuming no appeal is filed during the thirty (30) days following the date the Court enters an order granting Final Approval of the Settlement; or (ii) if a timely appeal is filed, then the date of final resolution of that appeal or other collateral attack (including any requests for rehearing and/or petitions for certiorari, or motions to intervene or vacate), resulting in final judicial approval of the Settlement or withdrawal of such appeal.

16. “Preliminary Approval Order” means an entry by the Court of an order preliminarily approving the Settlement.

17. “Insight Ohio Facilities” means the Insight Foundation of Hillside’s and Insight Foundation of Trumbull’s facilities located at 1350 East Market Street, Warren, Ohio 44482, 20

Ohltown Road, Austintown, Ohio 44515, 2580 Elm Road, Cortland, Ohio 44410, and 8747 Squires Lane NE, Warren, Ohio 44484, as applicable.

18. "Tier 1 Eligible Settlement Participants" means all employees employed by Insight Foundation of Hillside and/or Insight Foundation of Trumbull at the Insight Ohio Facilities on March 28, 2025, whose identities are identified in payroll records previously produced to Class Counsel, who have alleged outstanding amounts of accrued, but unpaid, vacation time. Defendants' Counsel shall provide the Settlement Administrator with a report of all accrued vacation of each employee, including the name, social security number, along with the last known addresses and tax identification numbers for each and every one of the Tier 1 Eligible Settlement Participants within twenty (20) days after the Court grants Preliminary Approval of the Settlement. Class Counsel will receive a redacted version of the report, excluding tax identification numbers and social security numbers.

19. "Tier 2 Eligible Settlement Participants" means all employees employed by Insight Foundation of Hillside and/or Insight Foundation of Trumbull at the Insight Ohio Facilities on March 28, 2025, whose identities are contained in payroll records previously produced to Class Counsel, and who were participants in Defendants' medical benefit plans and have paid for medical expenses that were incurred prior to April 28, 2025, which medical expenses would have been covered by medical benefits provided by Defendants. Defendants' Counsel shall provide the Settlement Administrator with the last known addresses and tax identification numbers for each and every one of the Tier 2 Eligible Settlement Participants within twenty (20) days after the Court grants Preliminary Approval of the Settlement. Class Counsel will receive a redacted version of the report, excluding tax identification numbers and social security numbers.

20. "Tier 3 Eligible Settlement Participants" means all Tier 1 and Tier 2 Eligible Settlement Participants, plus all employees employed at the Insight Ohio Facilities from January 1, 2025 to March 28, 2025, whose identities are contained in payroll records previously produced to Class Counsel, and who were terminated without cause on their part on, about, or after March 28, 2025 due to the closure of Insight's Ohio Facilities. Tier 3 Eligible Settlement Participants include the Representative Plaintiffs. Defendants' Counsel shall provide the Settlement Administrator with the names, last known addresses, and tax identification numbers for each and every one of the Tier 3 Eligible Settlement Participants within twenty (20) days after the Court grants Preliminary Approval of the Settlement. Class Counsel will receive a redacted version of the report, excluding tax identification numbers and social security numbers.

21. "First Round Tier 1 Claimant Individual Settlement Payment" means the amount payable (accrued vacation) to each individual Tier 1 Claimant, as determined by the Settlement Administrator (as defined herein) in consultation with Class Counsel and Union Counsel, based on the aggregate amount available in the Accrued Vacation Settlement Fund (defined herein) and the Tier 1 Claimant's timely submission of a Claim Form, as well as any other validating information provided to the Settlement Administrator/Class Counsel relating to an individual's accrued but unpaid vacation as of March 28, 2025. First Round Tier 1 Claimant Individual Settlement Payments shall be subject to all applicable taxes and withholdings. If the First Round Tier 1 Claimant Individual Settlement Payments exceed the balance of the Accrued Vacation Settlement Fund, the aggregate First Round Tier 1 Claimant Individual Settlement Payments shall be reduced pro rata in order to avoid aggregate payments that exceed the balance of the Accrued Vacation Settlement Fund. If the total amount of First Round Tier 1 Claimant Individual Settlement Payments is less than $1,300,000.00, the remaining funds will be distributed to the

Global Settlement Fund for distribution to Third Round Tier 3 Claimants, after deduction of Class Counsel's Fees. All First Round Tier 1 Claimants will receive a full or pro rata distribution, based on available funds, from the first round of payments on or about January 10, 2027 or within twenty (20) days after the Effective Date of this Agreement (whichever date is later).

22. "Second Round Tier 2 Claimant Individual Settlement Payment" means the amount payable to each individual Tier 2 Claimant, as determined by the Settlement Administrator (as defined herein) in consultation with Class Counsel and Union Counsel, based on the Tier 2 Claimant's timely submission of a Claim Form, as well as any other validating information provided to the Settlement Administrator/Class Counsel relating to (1) healthcare expenses that the Claimant paid for medical services rendered on or before April 28, 2025, but that would have been paid by the medical insurance provided by Defendants and (2) healthcare expenses that healthcare providers are still seeking from the Claimant for medical services rendered on or before April 28, 2025, but that would have been paid by the medical insurance provided by Defendants. If the Second Round Tier 2 Claimant Individual Settlement Payments exceed $200,000.00, then the aggregate Second Round Tier 2 Claimant Individual Settlement Payments shall be reduced pro rata in order to avoid aggregate payments that exceed $200,000.00. If the total amount of Second Round Tier 2 Claimant Individual Settlement Payments is less than $200,000.00, the remaining funds will be distributed to the Third Round Tier 3 Claimants.

23. "Third Round Tier 3 Claimant Individual Settlement Payments" means the amount payable to each individual Tier 3 Claimant, as determined by the Settlement Administrator (as defined herein) in consultation with Class Counsel and Union Counsel, based upon the aggregate amount available in the Net Settlement Fund (defined herein), the balance of which shall be divided

among the Third Round Tier 3 Claimants, who do not opt-out of this Settlement on a pro rata basis according to their final pay rates, and subject to all applicable taxes and withholdings.

24. "Global Settlement Fund" means the gross settlement amount of exactly Five Million, One-Hundred Thousand Dollars ($5,100,000.00). Unless otherwise specified herein, the Global Settlement Fund is the payment by the Defendants and includes (1) all Settlement Payments (defined below); (2) any Service Awards approved for Representative Plaintiffs; (3) costs of administration of the settlement; and (4) all Class Counsels' attorneys' fees and litigation expenses approved by the Court.

25. "Accrued Vacation Settlement Fund" means the One Million, Three-Hundred Thousand Dollars ($1,300,000.00) available for the Tier 1 Individual Settlement Payments from the Global Settlement Fund to pay First Round Tier 1 Claimants' earned, but unpaid, accrued vacation payouts.

26. "Net Settlement Fund" means the amount available for Tier 2 and Tier 3 Individual Settlement Payments, after deducting the amount in the Accrued Vacation Settlement Fund, all attorneys' fees and litigation expenses, costs of administration, and the Service Awards for the Representative Plaintiffs from the Global Settlement Fund.

27. "Notice of Settlement" means the form approved by the Parties' Counsel, and subject to Court approval, that will be sent to every Tier 1, 2, and 3 Eligible Settlement Participant, which will explain this Settlement and the claims process.

28. "Event of Default" means Defendants failed to pay when due any payment to the Global Settlement Fund and such failure continued for five (5) consecutive business days after Defendants received Notice of the failure to pay per this Settlement Agreement by the Settlement Administrator or Class Counsel.

29. "Released Claims" means, upon the Effective Date, Representative Plaintiffs, Claimants, and the Unions, on behalf of themselves and their respective former and present representatives,, officers, agents, heirs, administrators, predecessors, successors, and assigns, will release, and forever discharge, Released Parties, from any and all claims that are, or were, in any way, related to the factual allegations in the Action, employment benefits provided through the Defendants, or otherwise relating to their employment with any Defendant(s), as applicable, including claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, arising on, or before, the Effective Date, that were, or could have been, asserted, including any claims for liquidated damages, attorneys' fees, costs, expenses, penalties, interest, and Service Awards. Representative Plaintiffs, Claimants, and the Unions agree that neither they nor any of their former and present representatives, officers, agents, heirs, administrators, predecessors, successors, and assigns will ever sue or assert in any forum any such Released Claims. "Released Claims" shall not include proof of claims in any bankruptcy proceeding or a claim in any other proceeding that may affect Claimants' right to recover the Settlement Payments provided in this Agreement.

30. "Released Parties" means the corporate Defendants and any of their present and former officers, directors, shareholders, owners, members, associates, employees, representatives, agents, insurers, reinsurers, attorneys, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates, board members thereof, and otherwise related entities and any other persons acting by, though, under, or in concert with, any of these persons or entities, and their successors, and the individual Defendants and any of their spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, attorneys, and offspring.

31. "Service Award" means the payment made from the Global Settlement Fund to Representative Plaintiffs for their services in bringing and prosecuting the Action.

32. "Settlement" means the Parties' resolution of the Action as to Claimants and the Unions.

33. "Settlement Payments" means any and all payments contemplated under this Agreement to Tier 1, Tier 2, and Tier 3 Claimants from the Global Settlement Fund, subject to all applicable taxes and withholdings.

34. "Settlement Administrator" shall mean SIMPLURIS.

35. "Final Approval" means the Court's order granting final approval of the Settlement.

36. "Judgment" means the judgment entered by the Court based upon the Final Approval.

**CONSIDERATION AND PAYMENT SCHEDULE**

37. In exchange for Claimants' and the Unions' release of the Released Claims against the Released Parties, Defendants shall fund the Global Settlement Fund amount of Five Million, One-Hundred Thousand Dollars ($5,100,000.00) based on the following schedule (hereinafter "Payment Schedule"):

| **Due Date** | **Payment Amount** |
|---|---|
| December 31, 2026 | $1,500,000.00 |
| March 31, 2027 | $300,000.00 |
| June 30, 2027 | $300,000.00 |
| September 30, 2027 | $300,000.00 |
| December 31, 2027 | $300,000.00 |
| March 31, 2028 | $300,000.00 |
| June 30, 2028 | $300,000.00 |
| September 30, 2028 | $300,000.00 |
| December 31, 2028 | $300,000.00 |
| March 31, 2029 | $300,000.00 |
| June 30, 2029 | $300,000.00 |
| September 30, 2029 | $300,000.00 |
| December 31, 2029 | $300,000.00 |

38. If based on the above Payment Schedule, a payment is due *prior* to the Effective Date of the Settlement Agreement, then Defendants shall make such payment(s) to the Settlement Administrator who will hold any payment(s) prior to the Effective Date in escrow in an interest-

bearing account. Should the Settlement Agreement become void for any reasons set forth herein, then the Settlement Administrator shall refund Defendants all amounts paid prior to the Effective Date, within five (5) days of the Settlement Agreement becoming void.

39. In consideration of their eligibility for the Service Awards, Representative Plaintiffs, on behalf of themselves and their respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors in-interest and assigns, hereby knowingly and voluntarily forever release and discharge the Released Parties from any and all claims, obligations, causes of action, actions, losses, expenses, demands, rights, and liabilities of every kind, nature and description, whether known or unknown, whether anticipated or unanticipated, arising prior to the Effective Date, including but not limited to those claims that: (a) were pled in the Action at any time; (b) could have been pled in the Action, including all claims based on any of the following: (i) alleged failure to pay any type of overtime wages, (ii) alleged failure to pay any type of minimum wages, (iii) alleged failure to pay any type of otherwise earned wages (including straight time wages, bonuses, commissions, incentive payments, etc.), (iv) any other alleged federal wage-and-hour violation, (v) any other alleged state wage-and-hour violation; (vi) alleged discrimination, retaliation, harassment, or wrongful discharge, including, without limitation, claims under the Sarbanes-Oxley Act or the False Claims Act ("FCA") as well as claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"); the Age Discrimination in Employment Act ("ADEA"); the Worker Adjustment and Retraining Notification Act ("WARN"); the Fair Credit Reporting Act ("FCRA"); the Family and Medical Leave Act ("FMLA"); the Equal Pay Act; the Genetic Information Nondiscrimination Act ("GINA"); and any Ohio counterparts, (vii) any right to reinstatement of employment with Defendants and any duty or obligation of Defendants to consider Representative Plaintiffs for

future employment, and (viii) any statutory, constitutional, regulatory, contractual or common law employment-related claims for wages, damages, restitution, equitable relief, or litigation costs; and (c) this release includes any and all of the following based on any of the matters released by the foregoing: penalties, statutory damages, liquidated damages, punitive damages, attorneys' fees and expenses, litigation costs, restitution, and equitable relief.

40. The Defendants may prepay the full Global Settlement Fund amount of Five Million, One-Hundred Thousand Dollars ($5,100,000.00) in whole or in part at any time from time to time without penalty or premium.

41. Each of the Defendants shall be jointly and severally liable for the full balance due in the Global Settlement Fund of Five Million, One-Hundred Thousand Dollars ($5,100,000.00).

42. Upon the occurrence and during the continuance of an Event of Default, Class Counsel may, at its option, declare pursuant to a written notice to Defendants (which may be via email to Defendants' counsel) (the "Acceleration Notice") any outstanding amounts that Defendants owe to the Global Settlement Fund immediately due and payable. Upon the occurrence and during the continuance of an Event of Default, any amount due and payable to the Global Settlement Fund shall be assessed a penalty at the rate of 8% per annum as of the date of when the non-payment of such amount resulted in an Event of Default and such unpaid, outstanding amounts and accrued penalty shall be immediately payable. If all outstanding amounts owed to the Global Settlement Fund have been declared immediately due and payable in accordance with this Section, such accelerated amounts shall be assessed a penalty at a rate of 8% per annum as of the date the Acceleration Notice is received by the Defendants. The Defendants shall be jointly and severally liable for the balance due to the Global Settlement Fund until the full amount of Five Million, One-

Hundred Thousand Dollars ($5,100,000.00) is paid, plus all accrued interest, attorney's fees and costs incurred after the uncured Event of Default.

43. Should any one or more of the Defendants file for bankruptcy prior to an Event of Default, Class Counsel may, at its option, file a proof of claim in such bankruptcy proceeding for the full amount of any amounts remaining due to the Global Settlement Fund. Class Counsel retains discretion to object to any proposed assumption and/or rejection of this Settlement Agreement in a bankruptcy proceeding. Notwithstanding the foregoing, in the event one or more of the Defendants file for bankruptcy and Class Counsel files a proof of claim, the Defendants who have not filed for bankruptcy will remain obligated to pay all Settlement Payments when due.

**DENIAL OF LIABILITY**

44. Defendants deny liability or wrongdoing of any kind associated with the claims alleged in the Action. Consequently, this Agreement is a compromise, and shall not be construed as an admission of liability, culpability, or wrongdoing by Defendants or the Released Parties, for any purpose, and under any circumstance. This Agreement, as well as the negotiations that occurred in connection with its creation, shall not constitute evidence with respect to any issue, or dispute, in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement. The Parties do not concede any claims or defenses that were, or could have been, raised in the Action; rather, they merely negotiated and reached a settlement to avoid further disputes and litigation and the attendant inconvenience and expense.

## CERTIFICATION OF THE CLASS

45. For purposes of this Settlement only, the Parties agree that Representative Plaintiffs and the Tier 1, Tier 2, and Tier 3 Eligible Settlement Participants are similarly situated under Federal Rule of Civil Procedure 23 and agree to certification of the class of Tier 1, Tier 2, and Tier 3 Eligible Settlement Participants who do not opt-out (the "Class"). In the event that this Settlement is not approved or is not consummated for any reason, this paragraph shall not be used, either directly or indirectly, as an admission or as evidence in any subsequent litigation that Tier 1, Tier 2, or Tier 3 Eligible Settlement Participants are similarly situated.

## DUTIES OF THE PARTIES TO COOPERATE TO OBTAIN COURT APPROVAL OF THE SETTLEMENT

46. The Parties will fully cooperate with each other and use reasonable efforts, including all efforts contemplated by this Settlement and any other efforts ordered by the Court, to accomplish the terms of this Settlement, including but not limited to, executing such documents, identifying eligible Tier 1, Tier 2, and Tier 3 Claimants, and taking such other action as may reasonably be necessary to jointly obtain approval of this Settlement without material modifications and to implement its terms. If the Court does not approve this Settlement, it will become null and void.

## CLASS COUNSEL'S FEES AND EXPENSES

47. Subject to final Court approval of this Agreement, and after deduction of the Accrued Vacation Settlement Fund ($1,300,000.00) from the Global Settlement Fund, Class Counsel is entitled to attorneys' fees ("Class Counsel's Fees") in the amount of one third of the remaining Global Settlement Fund, plus litigation expenses (including settlement administration and noticing costs) ("Class Counsel's Expenses") estimated to be approximately $45,000.00, which shall be payable solely from the Global Settlement Fund. Class Counsel's Fees and Class

Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter. Defendants agree not to oppose Class Counsel's Fees award; provided, however, that if the Court approves a lesser fee award, the Parties agree to review the impact of such fee award on the settlement and amend same if appropriate. The Settlement Administrator will wire Class Counsel's Fees and Class Counsel's Expenses after the Effective Date and according to instructions provided by Class Counsel. Payments shall be made in the following increments (1) a payment of $500,000.00 plus Class Counsel's Expenses, upon receipt of Defendants' initial payment on or around December 31, 2026 and one-third (1/3) of every quarterly payment thereafter until Class Counsel's Fees and any remaining Class Counsel's Expenses have been paid in full.

**SERVICE AWARD**

48. The Parties agree that, subject to final Court approval of this Agreement, the Representative Plaintiffs will be paid a one-time payment of a gross amount of $2,000.00 each for their services to the Class in this matter (the "Service Awards"). The Service Awards will be paid from the Global Settlement Fund and will be reported on an IRS Form 1099. The Settlement Administrator will mail the Service Awards to the Representative Plaintiffs after the Effective Date, and prior to distributing the First Round Tier 1 Claimant Individual Settlement Payments.

**SETTLEMENT ADMINISTRATOR'S DUTIES AND RESPONSIBILITIES**

49. The Parties agree the Settlement Administrator will be responsible for:

a. Establishing a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.* to administer the Global Settlement Fund;

b. Issuing all funds from the Global Settlement Fund;

c. Determining and finalizing the Class member distributions, including First Round Tier 1 Claimant Individual Settlement Payments, Second Round Tier 2 Claimant Individual Settlement Payments, and Third Round Tier 3 Claimant Individual Settlement Payments, as applicable;

d. Preparing, printing, and disseminating the Notice of Settlement to all Tier 1, Tier 2, and Tier 3 Eligible Settlement Participants, along with the Claim Form to all Tier 1 and Tier 2 Claimants, and the Opt-Out Form to Tier 3 Claimants;

e. Processing and maintaining a record of all Tier 1 and Tier 2 Eligible Settlement Participants that submit Claim Forms and reporting same on a weekly basis to the Class Counsel, Defendants' Counsel, and Union Counsel;

f. Promptly apprising Class Counsel and Defendant's Counsel of the activities of the Settlement Administrator, timely responding to inquiries of Class Counsel and Defendant's Counsel;

g. Mailing First Round Tier 1 Claimant Individual Settlement Payments, Second Round Tier 2 Claimant Individual Settlement Payments, and Third Round Tier 3 Claimant Individual Settlement Payment checks, as applicable, to all Claimants;

h. Wiring Class Counsel's Fees and Class Counsel's Expenses;

i. Mailing the Service Awards to the Representative Plaintiffs;

j. The withholding, transmittal, and reporting of the Tax and Withholding Amounts (defined below) and all payroll taxes, and preparing and mailing of all W-2 Forms, W-9 (if required) and/or 1099 Forms, where applicable;

k. Ascertaining forwarding addresses, to the extent possible, for each Notice of Settlement, First Round Tier 1 Claimant Individual Settlement Payment, Second Round Tier 2 Claimant Individual Settlement Payment, and Third Round Tier 3 Claimant Individual Settlement Payment checks returned as undeliverable;

l. Referring to Class Counsel and Union Counsel all inquiries by Tier 1 and Tier 2 Eligible Settlement Participants that the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Administrator's duties specified in this Agreement;

m. Promptly notifying Class Counsel, Union Counsel and Defendants' Counsel of any material requests or communications made by any Tier 1, Tier 2, or Tier 3 Eligible Settlement Participant who receives the Notice of Settlement;

n. Maintaining adequate records of its activities, including the date of the mailing of the Notices of Settlement, receipt of returned mail, and any other communications and attempted communications with Tier 1, Tier 2, and Tier 3 Eligible Settlement Participants;

o. Confirming, in writing to Class Counsel and Defendants' Counsel, its completion of the Settlement Administration of this Settlement;

p. Providing Defendants' Counsel and Class Counsel with confirmation of receipt of Defendants' payments into the Global Settlement Fund and notifying Defendants' Counsel and Class Counsel in the Event of Default;

q. Escrowing Defendants' payments in the Global Settlement Fund until the yearly distribution dates in 2027, 2028, 2029, and 2030.;

r. Providing a declaration in support of the motion for final approval of the Settlement;

s. Maintaining in confidence the data provided to it by Defendants pursuant to paragraphs 18, 19, and 20, using such data only for purposes of this Settlement and for no other purpose, and restricting access to such data to Settlement Administrator employees who need access to the data to effect and perform under this Agreement;

t. Such other tasks as customarily and regularly performed by a settlement administrator.

Settlement Administrator Costs in the amount of $45,000.00 shall be paid from the Global Settlement Fund.

**SETTLEMENT ADMINISTRATION TIMELINES**

50. Prior to the Effective Date, the Settlement Administrator shall open the Qualified Settlement Fund, which will hold the Global Settlement Fund.

51. Defendants' Counsel shall provide the Settlement Administrator with the names, social security numbers, and last known addresses for each of the Tier 1, Tier 2, and Tier 3 Eligible Settlement Participants. Class Counsel reserves the right to determine the eligibility of any

individual's participation in Tier 1, 2 or 3. Defendants' Counsel shall provide the Union Counsel and Class Counsel a redacted version of this data, excluding social security numbers.

52. By December 31, 2026, Defendants shall wire the first payment of $1,500,000.00 of the Global Settlement Fund to the Settlement Administrator, pursuant to wiring instructions provided by the Settlement Administrator. The Settlement Administrator may release $500,000.00 of Class Counsel's Fees and Class Counsel's Expenses upon receipt of Defendants' first payment to the Global Settlement Fund.

53. Except for the Representative Plaintiffs, the Settlement Administrator shall attempt to confirm the accuracy of the Tier 1, Tier 2, and Tier 3 Eligible Settlement Claimants' addresses through the United States Post Office's National Change of Address database and shall mail the Notice of Settlement in accordance with the Preliminary Approval Order to any updated address obtained therefrom. Union Counsel will also assist with identifying contact information for their members, as needed.

54. Pursuant to the Payment Schedule set forth above, Defendants shall wire quarterly payments of $300,000.00 into the Global Settlement Fund, pursuant to wiring instructions provided by the same, as set forth in the Payment Schedule herein. The Settlement Administrator will deposit the Defendants' funds into the Global Settlement Fund for a yearly distribution to Tier 1, Tier 2, and Tier 3 Eligible Settlement Participants by January 10th of each 2027 (or within twenty (20) days after the Effective Date of this Agreement (whichever date is later), and thereafter on January 10th of 2028, 2029, and 2030. The Settlement Administrator may release one-third (1/3) of Defendants' deposits to the Global Settlement Fund in 2027, 2028, and 2029, respectively, to satisfy amounts owed to Class Counsel for Class Counsel's Fees and Class Counsel's Expenses.

## THE CLAIMS PROCESS AND PAYMENT OF CLAIMANTS' INDIVIDUAL SETTLEMENT PAYMENTS

55. Within **twenty-one (21) days** after receiving the class data from Defendant's Counsel Court's entry of the Preliminary Approval Order, the Settlement Administrator shall mail the Notice of Settlement and Claim Form, to all Tier 1 and Tier 2 Claimants, and the Notice of Settlement and Opt-Out Form to all Tier 3 Claimants, in forms substantially similar to the those attached hereto, in an enclosed, postage-paid return envelope (the "Notice Mailing Date"). If any Notice of Settlement is returned as undeliverable, the Settlement Administrator will promptly attempt to locate such Claimant through other reasonable and legally acceptable means, and, if located, shall promptly mail a Claim Form and/or Opt-Out Form to such person.

56. Each Tier 1 and Tier 2 Claimant shall have **forty-five (45) days** from the Notice Mailing Date to submit his or her signed and completed Claim Form, and any such submission must be received by the Settlement Administrator on, or before, the forty-fifth (45th) day from the Notice Mailing Date (the "Claim Form Deadline"). The Representative Plaintiffs are required to submit a Claim Form to receive any First Round Tier 1 Individual Settlement Payment relating to accrued vacation time and/or any Second Round Tier 2 Claimant Individual Settlement Payment relating to unpaid medical expenses in addition to their Service Award under this Agreement.

57. A Tier 3 Claimant may opt-out of the Third Round Tier 3 Individual Settlement Payments by mailing an Opt-Out Form to the Settlement Administrator, including his/her name (and former names, if any), current address, telephone number, and the dates of employment with Defendants. Any such Opt-Out Form, must be received by the Settlement Administrator before the Claim Form Deadline. Opt-Out Forms that do not include all required information, or that are not received by the Settlement Administrator by the Claim Form Deadline, will be deemed null, void, and ineffective. A Tier 3 Claimant who submits a valid and timely request to opt-out shall

forfeit any right to distribution of a Third Round Tier 3 Settlement Payment, and will not be bound by the terms of the Settlement Agreement, if it is approved, or the final Judgment of this litigation. Notwithstanding the foregoing, any Tier 1 and/or Tier 2 Claimants who submit a Claim Form and are due to receive a First Round Tier 1 Settlement Payment and/or Second Round Tier 2 Settlement Payment are not permitted to opt-out of Third Round Tier 3 Settlement Payments. If the number of valid requests for exclusion identified exceeds 18% of the total eligible Tier 3 Claimants, Defendants may, but are not obligated, elect to withdraw from the Settlement. The Parties agree that, if Defendants withdraw, the Settlement shall be void ab initio, have no force or effect whatsoever, and that no Party will have any further obligation to perform under this Agreement; provided, however, Defendants will remain responsible for paying all settlement administration expenses incurred to that point. Defendants must notify Class Counsel and the Court of their election to withdraw not later than fourteen (14) days after the Settlement Administrator sends the final list of requests for exclusion to Defense Counsel, Class Counsel, and Union Counsel. The Parties separately agree that they and their respective counsel and employees will not solicit any Claimant to opt out of or object to the Settlement, or appeal from the Judgment.

58. The Notice of Settlement will explain that eligible Tier 3 Claimants that all objections to the settlement of Tier 3 Settlement Payments must be submitted to the Settlement Administrator and served upon all counsel of record no later than 30 days after initial mailing of the Notices of Settlement (or fourteen (14) days after the remailing of the Notice of Settlement in the event of an undeliverable mailing). Objections must state the basis of the objection and, if the objector intends to appear at the final approval hearing, he or she must state such fact, and the purpose of the appearance. The Parties will be permitted to respond in writing to objections within the time period set by the Court in its Preliminary Approval Order. Eligible Tier 3 Claimants who

fail to file timely objections will be deemed to have waived objections to the settlement and will be foreclosed from making any objections. By failing to make timely objections to the settlement, eligible Tier 3 Claimants will also be foreclosed from appealing any aspect of the settlement after final approval by the Court. At no time, shall any of the Parties or their counsel seek or solicit or otherwise encourage eligible Tier 3 Claimants to file or serve written objections to the Settlement Agreement, or appeal from the Order and Final Judgment. Class Counsel and Union Counsel shall not represent any eligible Tier 3 Claimants with respect to any such objections.

59. Within **Fourteen (14) days** of the close of the Claim Form Deadline, the Settlement Administrator, in consultation with Class Counsel and Union Counsel, shall determine the amounts of the First Round Tier 1 and Second Round Tier 2 Claimant Individual Settlement Payments as described herein and will distribute the payments after the Effective Date, as funds become available from Defendants' Payment Schedule.

60. The Settlement Administrator shall escrow funds that Defendants deposit pursuant to the Payment Schedule herein in the Global Settlement Fund, and distribute payments for First Round Tier 1 Claimants, Second Round Tier 2 Claimants, and Third Round Tier 3 Claimants on a rolling basis, once per year, on January 10, 2027 (or within twenty (20) days of the Effective Date, whichever is later), January 10, 2028, January 10, 2029, and January 10, 2030.

61. Within **twenty-one (21) days** following the Check Void Dates for the First Round Tier 1 Claimant Individual Settlement Payments and Second Round Tier 2 Individual Settlement Payments, or as soon thereafter as practicable, the Settlement Administrator shall make funds available to be distributed for the Third Round Tier 3 Individual Settlement Payments.

## CHECK VOID DATES

62. All First Round Tier 1 Claimant Individual Settlement Payments and Second Round Tier 2 Individual Settlement Payments that are not negotiated by a Tier 1 and/or Tier 2 Claimant within **one hundred and eighty (180)** of the of date issuance shall be null and void; and the associated funds shall be returned to the Global Settlement Fund for distribution to the Third Round Tier 3 Claimants in accordance with this Settlement. The face of each check mailed by the Settlement Administrator pursuant to this Settlement shall prominently state the date (not less than 180 days after the date of mailing) when the check will be voided. The Settlement Administrator will cancel all checks not cashed by the void date.

63. After all issued or reissued checks are null and void in the final round of Third Round Tier 3 Individual Settlement Payments, the Settlement Administrator shall deposit any remaining funds from the Global Settlement Fund that are not distributed under the terms of this Agreement into an account designated by Defendants.

## TAX TREATMENT OF THE SETTLEMENT AWARDS

64. For tax purposes, the Parties agree that the Tier 2 Claimant Individual Settlement Payments will be characterized as reimbursements related to medical benefits/care, which will be reported on IRS Form 1099s. Tier 2 Claimants acknowledge that they have not relied on any statements or representations by the Released Parties with respect to the tax treatment of the Payment described in this Paragraph. If any taxing body determines that the tax treatment was incorrect (or any part thereof), Tier 2 Claimants acknowledge and assume all responsibility and liability for paying those amounts.

65. The Parties further agree that Tier 1 and Tier 3 Claimant Individual Settlement Payments shall be made net of all applicable employment taxes as determined to be due by the

Settlement Administrator, including, without limitation, FICA/Medicare tax and federal, state and local income and unemployment tax withholding (the "Tax and Withholding Amounts."). All applicable employer tax contributions, including the employer's share of the FICA/Medicare tax and any federal and state unemployment tax due, shall be calculated by the Settlement Administrator and paid by the Defendants to the Settlement Administrator by December 31, 2030, in addition to the amounts paid to the Global Settlement Fund, and shall be reported on an IRS Form W-2. Any earned interest accumulated in the Global Settlement Fund, exceeding $5,100,000.00, shall be used to pay amounts owed by Defendants for any lawfully required employer share of payroll taxes.

66. The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and shall pay from the Global Settlement Fund any and all taxes as well as any other obligations with respect to the payments or distributions not otherwise addressed in this Agreement.

67. In the event any taxing authority looks to Defendants for payment of taxes, interest or penalties in connection with the settlement awards made pursuant to this Agreement (excepting only Defendants' share of employer payroll taxes and other required employer withholdings), Representative Plaintiffs, Tier 1, Tier 2, and Tier 3 Claimant Individual Settlement Payment recipients agree to indemnify and hold Defendants harmless from payment of any such taxes, interest, penalties or other expenses incurred in connection with such payments.

68. The Parties are not providing any advice regarding taxes or taxability, nor shall anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

69. All taxes (including any estimated taxes, interest, or penalties) arising with respect to income earned by the Global Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendants with respect to income earned for any period during which the Global Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and expenses and costs incurred in connection with the operation and implementation of this Paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the Global Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Global Settlement Fund. The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Paragraph.

**FINAL APPROVAL AND DISMISSAL**

70. Following the Claim Form Deadline, Class Counsel will file an unopposed motion for final approval of the Settlement along with a proposed order, which will be filed no later than 30 days following the Claim Form Deadline, or otherwise as directed by the Court.

71. The proposed order granting final approval of the Settlement shall include terms: (1) asserting jurisdiction over the claims alleged, the Parties in the Action, and the implementation and administration of this Agreement; (2) adjudging the terms of the Settlement Agreement to be fair, reasonable and adequate, and in the best interests of the Representative Plaintiffs, Unions, and Class members, directing consummation of its terms and provisions, and approving the Settlement Agreement in its entirety; (3) granting final Judgment on the Released Claims; (4) dismissing the

Released Claims from the Action on the merits and with prejudice and permanently enjoining the Representative Plaintiffs, Unions, and all Claimants, and other related parties as defined herein, from prosecuting any Released Claims against the Released Parties; and (5) asserting and retaining jurisdiction over the claims alleged, the Parties in the Action, and the implementation and administration of this Settlement Agreement.

72. Within five (5) business days after the Effective Date, Union Counsel shall file a Notice of Voluntary Dismissal, with prejudice, in the matter captioned, *Ohio Council 8, American Federation of State, County and Municipal Employees, AFL-CIO, et al. v. Insight Foundation of Hillside, et al.,* which is currently pending in the United States District Court for the Northern District of Ohio, Eastern Division, Case No. 4:26-cv-00609. Union Counsel shall seek to extend the stay currently in place in this matter until the filing of the Notice of Voluntary Dismissal with prejudice.

73. Provided the Judgment is consistent with the terms and conditions of this Agreement, the Parties, their respective counsel, and all Tier 1, Tier 2 and Tier 3 Eligible Settlement Participants who did not object or opt-out of the Settlement as provided in this Agreement, waive all rights to appeal from the Judgment, including all rights to post-judgment and appellate proceedings, the right to file motions to vacate judgment, motions for new trial, extraordinary writs, and appeals. The waiver of appeal does not include any waiver of the right to oppose such motions, writs or appeals. If an objector appeals the Judgment, the Parties' obligations to perform under this Agreement will be suspended until such time as the appeal is finally resolved and the Judgment becomes final, except as to matters that do not affect the amount of the Gross Settlement Amount. Notwithstanding this, Defendants shall continue to be required to contribute amounts to the Global Settlement Fund in accordance with the Payment Schedule, which amounts

will be held in escrow until any appeal is resolved. For the avoidance of doubt and in accordance with paragraph 74 below, no settlement funds will be distributed until twenty (20) days after the appeal is resolved.

74. If the reviewing Court vacates, reverses, or modifies the Judgment in a manner that requires a material modification of this Agreement (including, but not limited to, the scope of release to be granted by Tier 1, Tier 2 and Tier 3 Eligible Settlement Participants who did not opt out of the Settlement), this Agreement shall be null and void. The Parties shall nevertheless expeditiously work together in good faith to address the appellate court's concerns and to obtain Final Approval and entry of Judgment, sharing, on a 50-50 basis, any additional administration expenses reasonably incurred after remittitur. An appellate decision to vacate, reverse, or modify the Court's award of the Plaintiff Representative Service Payment or any payments to Class Counsel shall not constitute a material modification of the Judgment within the meaning of this paragraph, as long as the Gross Settlement Amount remains unchanged.

## MISCELLANEOUS TERMS

75. The Parties agree that it is impossible or impracticable to have each Claimant or opt-in plaintiff execute this Agreement. Representative Plaintiffs and the Unions confirm that they have the authority to enter into this Agreement on behalf of all Claimants. The Claim Form and Opt-Out form will advise all recipients of the binding nature of the release and such will have the same force and effect as if each Claimant or opt-out plaintiff executed this Agreement.

76. This Agreement is binding upon, and shall inure to the benefit of, the Parties. Without limiting the foregoing, this Agreement specifically shall inure to the benefit of the Released Parties; likewise, this Agreement shall be binding upon Representative Plaintiffs' and

the Claimants' spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring.

77. No person shall have any claim against Defendants or Defendants' Counsel based on distributions and payments made in accordance with this Agreement. Claimants, Representative Plaintiffs, and the Unions may hereafter discover facts or legal arguments in addition to or different from those they now know or currently believe to be true with respect to the claims and causes of action in this Action and that are the subject matter of the Released Claims. Regardless, the discovery of new facts or legal arguments shall in no way limit the scope or definition of the Released Claims, and by virtue of this Agreement, Claimants, Representative Plaintiffs, and the Unions shall be deemed to have fully, finally, and forever settled and released all of the Released Claims as defined above.

78. The Parties separately warrant and represent that they have authorized their respective Counsel to take all appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms, and to execute any other documents reasonably required to effectuate the terms of this Agreement including any amendments to this Agreement.

79. The Parties and their counsel will cooperate with each other and use their best efforts, in good faith, to implement the Settlement by, among other things, modifying the Settlement Agreement, submitting supplemental evidence and supplementing points and authorities as requested by the Court. In the event the Parties are unable to agree upon the form or content of any document necessary to implement the Settlement, or on any modification of the Agreement that the Court deems necessary to implement the Settlement, the Parties will seek the assistance of a mediator and/or the Court for resolution.

80. The Parties separately represent and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity and portion of any liability, claim, demand, action, cause of action, or right released and discharged by the Party in this Settlement.

81. The Parties and their respective counsel believe and warrant that this Agreement reflects a fair, reasonable, and adequate settlement of the Action and have arrived at this Agreement through arms-length negotiations, taking into account all relevant factors, current and potential.

82. Information and data provided to the Unions and Class Counsel by Defendants in connection with the mediations, other settlement negotiations, or in connection with the Settlement, may be used only with respect to this Settlement, and no other purpose, and may not be used in any way that violates any existing contractual agreement or by Unions or Class Counsel to defend against any claims that relate to the Settlement and that are brought by Claimants against any of the parties or their representatives, statute, or rule of court. Not later than sixty (60) days after the date when the Court discharges the Settlement Administrator's obligation to provide a declaration confirming the final pay out of all Settlement funds, Class Counsel, the Unions and Representative Plaintiffs shall destroy, all paper and electronic versions of such data received from Defendants.

83. The Parties agree that upon the execution of this Agreement the litigation in U.S. District Court Northern District of Ohio Case No. 4:25-cv-00644 shall be stayed, except to effectuate the terms of this Agreement. Moreover, litigation in U.S. District Court Northern District of Ohio Case No. 4:26-CV-00609 shall be stayed pending final approval of this Settlement and all grievances filed by the Unions with respect to the matters resolved and released in this Settlement shall be dismissed.

84. Unless an uncured Event of Default occurs, the Unions, Representative Plaintiffs, and Defendants agree to not publish any written press releases or statements regarding the Settlement, and agree to discourage other communications with the press about the Settlement, except to respond generally that the case was resolved and direct individuals and/or the press to the settlement website, if any, or in a joint statement with all parties. Representative Plaintiffs shall instruct Class Counsel, and Defendants shall instruct Defendants' Counsel to abide by the same requirements of this paragraph. This provision will not impede Class Counsel's and Union Counsel's ability to discharge legal, ethical and fiduciary duties, including providing notice to the class, communicating with union officers and bargaining unit members, and otherwise effectuating the terms of this Settlement.

## CONSTRUCTION, INTERPRETATION AND MODIFICATION

85. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter included in this Agreement and it shall supersede all prior and contemporaneous negotiations between the Parties. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for, or against, any party, regardless of who drafted, or who was principally responsible for drafting, this Agreement, or any specific term or condition in this Agreement. The Parties participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, the Parties may not claim any ambiguity in this Agreement should be construed against another.

86. If there is a conflict between this Agreement and any other document related to this Settlement, the Parties intend for this Agreement to control.

87. Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or

written representations or terms shall modify, vary, or contradict its terms. The Parties agree this Agreement is to be construed according to its terms and it may not be varied, or contradicted, by extrinsic evidence.

88. This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Ohio, and shall be subject to the continuing jurisdiction of the Court.

89. If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect to the extent this Agreement, as well as the obligations of the Parties, remains materially the same.

90. This Agreement may not be modified or amended, except in writing, signed by the Parties or their counsel, and as approved by the Court. This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

91. This Agreement is binding upon, and shall inure to the benefit of, the Parties. Without limiting the foregoing, this Agreement specifically shall inure to the benefit the Released Parties; likewise, this Agreement shall be binding upon the Claimants' spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring.

92. Any notice, demand, request, or other communication or document to be provided under this Agreement to a party to this Agreement shall be deemed given three business days after

sent by one party to the other, in writing by registered or certified U.S. mail, postage prepaid, upon receipt if by a nationally recognized overnight delivery service (unless otherwise permitted by email herein) sent to the addresses listed below:

Defendants:

[NAME/ ADDRESS]

With copy to:

Benesch, Friedlander, Coplan & Aronoff LLP

Juan Morado
71 South Wacker Drive
Suite 1600
Chicago IL 60606

Joseph R. Blalock, Esq.
41 South High St.
Suite 2600
Columbus, Ohio 43215

## CONTINUING JURISDICTION

93. The Parties agree to jointly move the Court to retain continuing jurisdiction to construe, interpret, and enforce the provisions of this Agreement, including to impose remedies for any default by Defendants; to supervise the administration and distributions from the Global Settlement Fund; and to hear and adjudicate any dispute or litigation arising from, or related to, this Agreement, or issues of law and facts asserted in the Action.

**WHEREFORE,** having fully read and understood the terms of this Agreement, the Parties sign their names below with the intention that they shall be bound by it.

INSIGHT FOUNDATION OF HILLSIDE

By: ______________________________

Print Name:________________________

Title:____________________________

Date:____________________________

INSIGHT FOUNDATION OF TRUMBULL

By: ______________________________

Print Name:________________________

Title:____________________________

Date:____________________________

FIRDAUS FOUNDATION

By: ______________________________

Print Name:________________________

Title:____________________________

Date:____________________________

JAWAD A. SHAH, M.D., P.C.

By: ______________________________

Print Name:________________________

Title:____________________________

Date:____________________________

DAVID MCCULLOUGH

__________________________________

Date:_____________________________

ANGELA FOOR

__________________________________

Date:_____________________________

VANESSA G. SATTERTHWAITE

__________________________________

Date:_____________________________

BILLIE E. FIKE

__________________________________

Date:_____________________________

OHIO COUNCIL 8, American Federation of State, County and Municipal Employees, AFL-CIO; and its LOCAL 2288, American Federation of State, County, and Municipal Employees; and its LOCAL 2804, American Federation of State, County and Municipal Employees, AFL-CIO; and its UNA LOCAL 2026, American Federation of State, County and Municipal Employees, AFL-CIO

By: ______________________________

Print Name:________________________

Title:____________________________

Date:____________________________

JAWAD A. SHAH, M.D.

________________________________________

Date:____________________________________

ALI MADHA

________________________________________

Date:____________________________________

SERVICE EMPLOYEES INTERNATIONAL
UNION, District 1199 WV/OH/KY

By: ____________________________________

Print Name:______________________________

Title:____________________________________

Date:____________________________________